UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| RAFAEL S. ORDAZ,<br><br>              Plaintiff,<br><br>   v.<br><br>HAROLD TATE, M.D.,<br>CHARLES O'BRIEN, M.D.,<br><br>              Defendants. | Case No. 1:07-CV-634-BLW-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Defendant Harold Tate, M.D.'s Motion for Summary Judgment (Dkt. 69) and Defendant Charles O'Brien, M.D's Motion for Summary Judgment (Dkt. 72).

## FACTUAL BACKGROUND

Plaintiff Rafael Ordaz ("Plaintiff" or "Ordaz") filed this action on April 26, 2007. He alleges that Doctors O'Brien and Tate were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they confiscated and denied

**MEMORANDUM DECISION AND ORDER - 1**

him the use of a walking cane from August 10, 2006 to November 2, 2006, while he was incarcerated at California Correctional Institution (CCI) in Tehachapi, California. During his deposition that took place on October 7, 2008, Plaintiff also indicated that he was asserting claims for medical malpractice and discrimination. Although these claims were not set forth in his complaint, the Court will address their merits in this order.

      Plaintiff transferred to CCI on August 10, 2006. On the day of his arrival, Ordaz was issued a Rules Violation Report for assaulting another inmate with his waist chains upon exiting the transfer bus. The informational report, signed by Correctional Sergeant D. Wilson, indicated Ordaz possessed a cane but he perpetrated the attack "without benefit of his cane" and other staff observed Ordaz "moving about spryly" during the incident. (Tate Dec., Ex. B, Dkt. 69-6.) After this event, Wilson reviewed Ordaz's Central File where it was reported that on December 30, 2005, Ordaz battered an officer at California Institute for Men (CIM) at Chino with the footrest of his wheelchair and on March 21, 2006, Ordaz attempted to batter an officer at CIM with his cane by swinging it at the officer. Wilson also noted that there was no medical chrono[1] located in the Central File authorizing the use of a cane. Wilson confiscated the cane and provided Ordaz with a Reasonable Accommodation Request Form. On August 30, 2006, Ordaz was seen and examined by Dr. O'Brien.  Dr. O'Brien ordered x-rays of Ordaz's low back and pelvis due to his complaints of back pain. The radiological report showed that his lumbar spine

---

[1] A chrono is a form required to issue a mobility device, such as a cane, to an inmate.

**MEMORANDUM DECISION AND ORDER - 2**

and pelvis were normal. Dr. O'Brien did not find that a cane chrono was indicated at that time because Ordaz was walking without difficulty. Ordaz's request was denied.

However, Ordaz was allowed to use a cane for "out of cell purposes," such as showers. On occasion, he was also provided a wheelchair escort to medical appointments. (Ordaz Dep. at 47:13-19, 49-50, 76:2-8, Dkt. 69-4.)

During Ordaz's time at CCI, from August 2006 until July 2007, Dr. O'Brien saw and treated him on several occasions. Dr. O'Brien prescribed Ordaz with muscle relaxants for back pain and ordered an MRI and bloodwork on October 4, 2006. On October 8, 2006, Ordaz fell in his cell and was treated for a cut to his forehead. Dr. O'Brien saw him on October 11, 2006, tested his range of motion and examined his left groin area for continued drainage following a hernia surgery. He prescribed antibiotics on October 15, 2006 for an infection in his left groin area. On October 19, 2006, Ordaz underwent an MRI. On October 25, 2006, Dr. O'Brien again examined Ordaz, noted he had a stiff back but had been walking without use of a cane, walker or wheelchair. He prescribed muscle relaxants, pain medication, antibiotics and referred him to a podiatrist. On November 2, 2006, another physician reviewed the results of the MRI and prescribed Ordaz a cane.

Dr. O'Brien renewed Ordaz's prescription for muscle relaxants and pain medication on January 31, 2007. He again treated Ordaz for low-back pain on February 14, 2007, prescribed a back brace for support and ordered lab work. He also prescribed antifungal medication for an infection in his toenails. Dr. O'Brien continued to renew

**MEMORANDUM DECISION AND ORDER - 3**

Ordaz's prescription for muscle relaxants and pain medication during 2007. He ordered an electrocardiogram for Ordaz on March 7, 2007 and ordered a Hepatitis B vaccine and prescribed multi-vitamins on April 18, 2007. While examining Ordaz for a follow-up to his hepatitis treatment, Dr. O'Brien conducted a physical examination and tested his back's range of motion. Noting that Ordaz had increased back pain, he prescribed a stronger pain medication and muscle relaxants on May 9, 2007.

Dr. O'Brien treated Ordaz for drainage from his left groin area and back pain on June 4, 2007. At that time, Ordaz had consulted with a sports medicine specialist, Dr. Tanji, who recommended epidural steroid injections to control his back pain. Dr. O'Brien also referred Ordaz to a pain management clinic and referred him for a surgery consult on his groin. On June 12 and 20, 2007, Dr. O'Brien renewed the prescription for pain medication and prescribed a stronger antibiotic. He also examined Ordaz and tested his range of motion. Dr. O'Brien ordered chronos for a low tier cell and low bunk, a knee brace and a cane. Dr. O'Brien last renewed Ordaz's pain medication and antibiotics on June 27, 2007. Ordaz was released from CCI in July 2007.

Dr. Tate was the Chief Medical Officer at CCI during Ordaz's time at the facility. Dr. Tate never conducted a medical examination of Ordaz. He did request a consultation on behalf of Ordaz from UC Davis Associate Medical Director, Dr. Tanji.

In addition, on February 21, 2007 Dr. Tate issued a second level response to an

**MEMORANDUM DECISION AND ORDER - 4**

inmate appeal filed by Ordaz requesting that an 1845 verification[2] be completed, as well as requesting waist chain chronos and soft-soled boots. The request for soft-soled boots was granted at the first level of review. At the second level of review, Dr. Tate denied the requests for waist chain chronos and 1845 verification, finding that Ordaz did not meet the criteria for mobility impairment. (Tate Decl., Ex. A.) Other than these times, Dr. Tate did not have any contact with Ordaz except as Chief Medical Officer, he supervised the physicians, nurses and others who offered medical care at CCI.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

---

[2] In order for an inmate to be issued a medical device, such as a cane, a CDCR Form 1845 is completed which documents a valid mobility impairment.

**MEMORANDUM DECISION AND ORDER - 5**

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *See id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). In addition, the Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

**MEMORANDUM DECISION AND ORDER - 6**

DISCUSSION

**1. Eighth Amendment Claim**

To state an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (quotation omitted).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnotes

**MEMORANDUM DECISION AND ORDER - 7**

omitted).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). The Ninth Circuit has clarified that if medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment is proper. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

Dr. O'Brien examined Ordaz, or prescribed treatment for him, on at least a dozen occasions during his eleven months at CCI. Dr. O'Brien prescribed muscle relaxants, pain medications and a back brace for Ordaz's back pain. He prescribed stronger pain medication when it was needed. Dr. O'Brien ordered an MRI as well as x-rays and repeatedly tested Ordaz's range of motion. Dr. O'Brien referred Ordaz to a pain management clinic and ordered chronos for a low tier cell and low bunk. Dr. O'Brien also treated a staph infection in Ordaz's left groin area with antibiotics and ordered lab work to be conducted. There is no indication that Dr. O'Brien had subjective knowledge, or consciously disregarded, an excessive risk to Plaintiff's health and safety. Nor is there evidence that Dr. O'Brien intentionally denied or delayed access to medical care. The

record indicates that Dr. O'Brien responded consistently to Plaintiff's medical needs, he ordered bloodwork and lab tests when necessary, as well an MRI and x-rays. He also prescribed Plaintiff medication for his back pain and antibiotics for an infection, among other medications for various ailments. He never intentionally denied or delayed medical care. Summary judgment will be granted in favor of Dr. O'Brien on this claim.

As Chief Medical Officer, Dr. Tate supervised all the physicians and nurses at CCI, who consistently examined Plaintiff and provided treatment for him, but Dr. Tate never personally examined Plaintiff. Dr. Tate did request a consultation by Dr. Tanji. The only other direct involvement Dr. Tate had with Plaintiff was a denial at the second level of his request for waist-chain chronos and 1845 verification. In making this denial, Dr. Tate conducted a comprehensive review of Plaintiff's medical file and noted that there were numerous accounts of Plaintiff's flexibility and agility and that the MRI results indicated that neurosurgical intervention was not justified. The record does not indicate that Dr. Tate had knowledge of a serious medical need and consciously disregarded it. He did not intentionally deny or delay access to medical care or treatment. Summary judgment will be granted in his favor on this claim.

## 2. Qualified Immunity

Both Defendants contend they are entitled to qualified immunity. In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not

violate an inmate's clearly established federal rights. *Harlow v. Fitzergerald*, 457 U.S. 800, 818 (1982) (citations omitted). Contrarily, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id*. True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

There are two factors a court must analyze to determine whether qualified immunity applies: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." and (2) whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In *Pearson v. Callahan*, the Court held that lower courts considering the qualified immunity question need not first determine whether on the facts alleged, the plaintiff stated a violation of constitutional right, receding from *Saucier v. Katz*, 533 U.S. 194 (2001). *See Pearson v. Callahan*, 129 S.Ct. 809, 821-22 (2009).

The Court has determined above that Dr. O'Brien and Dr. Tate did not violate Plaintiff's Eighth Amendment rights, accordingly they are entitled to qualified immunity under the first prong of *Saucier v. Katz*.

**3.  ADA Discrimination Claim**

**MEMORANDUM DECISION AND ORDER - 10**

Title II of the ADA applies to a "qualified individual with a disability who with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). In order to proceed with an ADA claim, Plaintiff must show (1) that he has a disability; (2) that he is otherwise qualified to participate in or receive a public entity's services, programs or activities; (3) that he was denied the benefits of the services, programs or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Weinriech v. Los Angeles County Metropolitan Transportation Authority,* 114 F.3d 976, 978 (9th Cir. 1997).

The Supreme Court has held that the plain language of Title II of the ADA extends to prison inmates who are deprived of the benefits of participation in prison programs, services, or activities because of a physical disability. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 211 (1998). The term "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id*. Title II of the ADA has recently been upheld as a valid abrogation of state sovereignty "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original).

Under Title II of the ADA, plaintiffs may not sue individual defendants in their

**MEMORANDUM DECISION AND ORDER - 11**

individual capacities, but must instead sue the state or state entities. *See Lollar v. Baker,* 196 F.3d 603, 610 (5th Cir. 1999) (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010-11 (8th Cir.1999) (the ADA's comprehensive remedial scheme bars the plaintiff's claims against the commissioners in their individual capacities); *Baird v. Rose,* 192 F.3d 462, 471 (4th Cir. 1999) (Title II of the ADA does not recognize a cause of action for discrimination by private individuals, only public entities); *compare Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1188-87 (9th Cir. 2003) (holding that Title II's statutory language does not prohibit a plaintiff from requesting injunctive action against state officials in their official capacities). Plaintiffs may sue individual defendants in their official capacities for declaratory or injunctive relief under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).  *Clark v. California*, 123 F.3d 1267 (9th Cir. 1997).

Plaintiff's ADA claim is not cognizable against Defendants in their individual capacities.  To the extent that Plaintiff may sue Defendants in their official capacities for injunctive relief, Plaintiff has been released from prison and accordingly his request for injunctive relief is moot.

Further, his claim for discrimination based on a disability is barred. Plaintiff's request for injunctive relief is prohibited under *Armstrong v. Schwarzenegger* (N.D. Cal. No. C-94-2307 CW).  *Armstrong v. Schwarzenegger* was filed on behalf of all present and future state prisoners and parolees.  The court found that defendants violated the ADA and Rehabilitation Act and entered a remedial order, requiring the implementation

**MEMORANDUM DECISION AND ORDER - 12**

of CDCR's Disability Placement Plan which sets out the policy of CDCR to provide access to its programs and services to inmates and parolees with disabilities, with or without reasonable accommodation, consistent with legitimate penological interests. The court also entered a permanent injunction retaining jurisdiction to enforce the injunction.

A plaintiff who is a member of a class action suit for equitable relief from prison conditions cannot maintain a separate, individual suit for equitable relief within the same subject matter of the class action. *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988); *McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991). Accordingly, Plaintiff's claim and request for injunctive relief is barred.

Lastly, Plaintiff does not set forth any facts or evidence in his pleadings to establish that he was discriminated against on basis of his alleged disability. The claim is not mentioned in his complaint; instead it was raised in his deposition. Plaintiff's complaint and pleadings focus on his medical treatment. The ADA is not a remedy for inadequate medical treatment. *See Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."))  To the extent Plaintiff alleges that he was denied access to shower or the yard, Defendants, as physicians at CCI, had no control over or responsibility for Plaintiff's activities as an inmate at CCI.

### 4. Medical Malpractice Claim

Under California's Government Claims Act, section 910 et seq., which governs

**MEMORANDUM DECISION AND ORDER - 13**

actions against public entities and public employees, litigants must meet certain prescribed time limitations in order to avoid dismissal of their lawsuit. *Apollo v. Gyaami*, 167 Cal. App. 4th 1468, 1486, n.13 (Cal. Ct. Ap. 2008). Specifically, under section 945.4, no person may sue a public entity or public employee for damages unless such person has presented a timely written claim to the public entity, which the public entity has then rejected. *Id*. *See also State of California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (Cal. 2004). State court claims in a federal court action pursuant to 42 U.S.C. § 1983 must allege compliance with this requirement. *Yearby v. California Dep't of Corrections*, 2010 WL 2880180, *5 (E.D. Cal. July 21, 2010).

Plaintiff has not provided any evidence, or even alleged, that he has complied with the requirement of the Government Claims Act. Failure to allege facts either establishing or excusing compliance with the Act subjects a complaint to dismissal for failure to state a claim. *State of California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1245 (Cal. 2004). There is no evidence or allegation that Plaintiff filed the necessary written claim that is a prerequisite to his filing of a tort action for medical malpractice against public employees. His claim will be dismissed.

## ORDER

IT IS ORDERED:

1. Defendant Tate's Motion for Summary Judgment (Dkt. 69) is GRANTED.

2. Defendant O'Brien's Motion for Summary Judgment (Dkt. 72) is

GRANTED.

3. Plaintiff's claims against Defendants O'Brien and Tate are DISMISSED with prejudice.

4. Judgment for the Defendants shall be entered.

DATED: **September 30, 2010**

B. LYNN WINMILL
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 15**